People v Farrington (2019 NY Slip Op 03237)





People v Farrington


2019 NY Slip Op 03237


Decided on April 26, 2019


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on April 26, 2019
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: CENTRA, J.P., CARNI, LINDLEY, TROUTMAN, AND WINSLOW, JJ.


1375 KA 16-00643

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
HERBERT FARRINGTON, DEFENDANT-APPELLANT. 






CHARLES J. GREENBERG, AMHERST, FOR DEFENDANT-APPELLANT.
HERBERT FARRINGTON, DEFENDANT-APPELLANT PRO SE.
MICHAEL J. FLAHERTY, JR., SPECIAL DISTRICT ATTORNEY, WARSAW, FOR RESPONDENT. 


 Appeal from a judgment of the Wyoming County Court (Michael M. Mohun, J.), rendered January 25, 2016. The judgment convicted defendant, upon a jury verdict, of assault in the second degree. 
It is hereby ORDERED that the judgment so appealed from is unanimously affirmed.
Memorandum: Defendant appeals from a judgment convicting him upon a jury verdict of assault in the second degree (Penal Law
§ 120.05 [7]). At the time of the crime, defendant was incarcerated at Attica Correctional Facility, serving a term of incarceration for manslaughter in the first degree (People v Farrington, 295 AD2d 1022 [1st Dept 2002], lv denied 99 NY2d 535 [2002]), as well as a consecutive term of incarceration upon a conviction of attempted promoting prison contraband in the first degree (People v Farrington, 51 AD3d 1221 [3d Dept 2008], lv denied 11 NY3d 736 [2008]). At trial, several correction officers testified that they observed defendant and the victim fighting, and one correction officer testified that, after the men separated, the victim's "right ear was cut through and cut clear to the back of his neck at the base of his skull." Medical testimony established that the victim's "right ear was cut right through" and that he had "a six inch long laceration, very deep requiring sutures" on the right side of his neck. The victim, however, did not testify at trial.
Defendant contends in his main brief that County Court erred in permitting a prosecution witness to testify that the victim told him that "the man he was fighting with was the one that cut him" because that statement did not fall under the excited utterance exception to the rule against hearsay. We reject that contention. The victim made the statement approximately 12 to 15 minutes after the assault and while he was being treated in the prison's infirmary. Testimony at trial established that, at the time of the statement, the victim appeared to be "emotional," "mad," "angry," and "very agitated." The statement qualified as an excited utterance inasmuch as that statement was "made shortly after the [assault and] . . . while [the victim] was under the extraordinary stress of [his] injuries" (People v Jones, 66 AD3d 1442, 1443 [4th Dept 2009], lv denied 13 NY3d 939 [2010]; see People v Lewis, 93 AD3d 1264, 1267 [4th Dept 2012], lv denied 19 NY3d 963 [2012]; cf. People v Johnson, 1 NY3d 302, 307 [2003]).
With respect to that same statement, defendant further contends in his main brief that the statement was speculative and, therefore, inadmissible inasmuch as it was established at trial that the victim did not actually see the person who cut him. Defendant, however, "failed to object to the admission of the [statement] on that ground" and, as a result, we conclude that the contention has not been preserved for our review (People v Jones, 175 AD2d 662, 662 [4th Dept 1991], lv denied 78 NY2d 1128 [1991], reconsideration denied 79 NY2d 828 [1991]; see also People v Blackman, 13 AD3d 640, 641 [2d Dept 2004], lv denied 4 NY3d 796 [2005]). We decline to [*2]exercise our power to address that contention as a matter of discretion in the interest of justice (see CPL 470.15 [6] [a]).
Although defendant further contends in his main brief that he was denied a fair trial by prosecutorial misconduct on summation, he correctly concedes that his contention is not preserved for our review (see People v Smith, 32 AD3d 1291, 1292 [4th Dept 2006], lv denied 8 NY3d 849 [2007]). Exercising our discretion to address that contention as a matter of discretion in the interest of justice (see CPL 470.15 [6] [a]), we conclude that defendant's contention lacks merit.
In his summation, defense counsel informed the jurors that the trial had taken them "into a very strange environment, an environment that's foreign to all of us. State prison is a violent, unpredictable place." After noting the absence of the victim from the trial, defense counsel invited the jurors to "speculate about why [the victim] was not [t]here." In response, the prosecutor asked the jurors to use their "common sense" to determine the reasons that the victim may not have wanted to cooperate with the trial, noting that testimony had established that the victim was still incarcerated on the same cell block in the same prison, i.e., an environment that defense counsel had described as strange, foreign and violent. Contrary to defendant's contentions, we conclude that the prosecutor's "comment[s] concerning the failure of [the victim] to testify [were] a fair response to the summation of defense counsel" (People v Gozdalski, 239 AD2d 896, 897 [4th Dept 1997], lv denied 90 NY2d 858 [1997]; see People v Rowe, 105 AD3d 1088, 1091 [3d Dept 2013], lv denied 21 NY3d 1019 [2013]; People v Green, 43 AD3d 1279, 1281-1282 [4th Dept 2007], lv denied 9 NY3d 1034 [2008]), and that the prosecutor did not improperly suggest that any uncharged crimes had been committed by defendant (see Rowe, 105 AD3d at 1091; Green, 43 AD3d at 1281-1282). We further conclude that the prosecutor did not act as an unsworn witness inasmuch as the prosecutor did not "present[] [his] opinion as to why [the victim] did not appear in court to testify" (People v Bonaparte, 98 AD2d 778, 778 [2d Dept 1983]; cf. People v Flowers, 151 AD3d 1843, 1843-1844 [4th Dept 2017], lv denied 30 NY3d 1104 [2018]).
Defendant contends in his pro se supplemental brief that he was denied effective assistance of counsel based on defense counsel's failure to object to the prosecutor's comments on summation as well as certain questions posed by the prosecutor to prospective jurors. We reject that contention. In order to establish ineffective assistance of counsel, " it is incumbent on defendant to demonstrate the absence of strategic or other legitimate explanations' for counsel's alleged shortcomings" (People v Benevento, 91 NY2d 708, 712 [1998]), and "[i]t is well settled that the failure to make an objection that has little or no chance of success' does not constitute ineffective assistance of counsel" (People v Reed, 151 AD3d 1821, 1822 [4th Dept 2017], lv denied 30 NY3d 952 [2017], quoting People v Stultz, 2 NY3d 277, 287 [2004], rearg denied 3 NY3d 702 [2004]). Here, the objections that defendant contends should have been made to the prosecutor's comments on summation had little or no chance of success.
With respect to defense counsel's failure to object to certain questions the prosecutor posed to prospective jurors, we conclude that "[t]he prosecutor merely engaged in the standard trial tactic of giving the panel [of prospective jurors] a preview of the weaknesses in [his] case and gauging the reaction' " (People v Evans, 242 AD2d 948, 949 [4th Dept 1997], lv denied 91 NY2d 834 [1997]), and that defense counsel was thus not ineffective in failing to object to the prosecutor's questions (see generally Stultz, 2 NY3d at 287). Viewing the evidence, the law and the circumstances of this case in totality and as of the time of the representation, we further conclude that defendant received meaningful representation (see generally People v Baldi, 54 NY2d 137, 147 [1981]).
Defendant additionally contends in his pro se supplemental brief that the conviction is not supported by legally sufficient evidence and that the verdict is against the weight of the evidence based primarily upon his contention that there is no direct evidence that he was the person who cut the victim. "It is well settled that, even in circumstantial evidence cases, the standard for appellate review of legal sufficiency issues is whether any valid line of reasoning and permissible inferences could lead a rational person to the conclusion reached by the [factfinder] on the basis of the evidence at trial, viewed in the light most favorable to the People' " (People v Hines, 97 NY2d 56, 62 [2001], rearg denied 97 NY2d 678 [2001]; see People v Pichardo, 34 AD3d 1223, 1224 [4th Dept 2006], lv denied 8 NY3d 926 [2007]; see generally People v [*3]Bleakley, 69 NY2d 490, 495 [1987]). Although no one observed defendant with a weapon and no weapon was ever recovered from him, all of the eyewitnesses testified that there were only two people involved in the altercation. After the altercation, the victim had severe lacerations to his ear and neck. One eyewitness testified that defendant was "making wide X type punching slashing motions" at the victim, and the victim told officers that he was fighting with the man he thought cut him from behind. Thus, viewing the evidence in the light most favorable to the People (see People v Contes, 60 NY2d 620, 621 [1983]), and according them the benefit of every favorable inference (see People v Ford, 66 NY2d 428, 437 [1985]), we conclude that the evidence is legally sufficient to support the conviction (see generally Bleakley, 69 NY2d at 495).
Viewing the evidence in light of the elements of the crime as charged to the jury (see People v Danielson, 9 NY3d 342, 349 [2007]), we conclude that the verdict is not against the weight of the evidence (see generally Bleakley, 69 NY2d at 495). Although a defense witness testified that the victim was the initial aggressor, such testimony presented the jury with a credibility determination and, "[w]here, as here, witness credibility is of paramount importance to the determination of guilt or innocence, we must give great deference to the jury, given its opportunity to view the witnesses and observe their demeanor" (People v Streeter, 118 AD3d 1287, 1288 [4th Dept 2014], lv denied 23 NY3d 1068 [2014], reconsideration denied 24 NY3d 1047 [2014] [internal quotation marks omitted]; see People v Burroughs, 57 AD3d 1459, 1460 [4th Dept 2008], lv denied 12 NY3d 756 [2009]).
Entered: April 26, 2019
Mark W. Bennett
Clerk of the Court